**JURISPRUDENCE WIRELESS COMMUNICATIONS, INC., d/b/a JWC Cellular, Plaintiff/Appellant,**

v.

**CYBERTEL CORPORATION, d/b/a Ameritech Cellular Services, and Mark Eckhout, Defendants/Respondents.**

**No. ED 76314.**

Missouri Court of Appeals, Eastern District, Division Four.

June 27, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 3, 2000.

Application for Transfer Denied Oct. 3, 2000.

Douglas P. Dowd, James M. Dowd, St. Louis, for appellant.

Jeffrey J. Kalinowski, St. Louis, for respondent.

---

2. Defendant does not challenge his conviction of assault in the third degree in this appeal.

WILLIAM H. CRANDALL, Jr., Presiding Judge.

Plaintiff, Jurisprudence Wireless Communications, Inc. d/b/a JWC Cellular (hereinafter JWC), appeals from the judgment of the trial court granting summary judgment in favor of defendants, CyberTel Corporation d/b/a Ameritech Cellular Services (hereinafter CyberTel) and Mark Eckhout, in an action for tortious interference with a commercial or business expectancy. We affirm.

In February 1995, JWC[1] and CyberTel entered into two contracts. One agreement, entitled Ameritech Cellular, Paging and Wireless Data Services Sales Agreement (hereinafter Sales Agreement), provided that JWC would serve as an "agent" or "dealer" for the sale of various cellular telephone services to customers, who would then become the customers of CyberTel. JWC was paid a one-time commission per subscriber as well as a maintenance fee for each account equal to a percentage of the customer's monthly service charge. CyberTel reserved the right to approve any advertising or marketing materials to be used in the sale of services by JWC. The other agreement, entitled Equipment Agreement, provided that JWC, as CyberTel's "agent," would sell equipment to customers for the sole purpose of securing sales of CyberTel's cellular services.

CyberTel, through dealers such as JWC, developed a plan for businesses, known as Ameritech Cellular Business Concepts (hereinafter ACBC), which offered cellular and paging services at discounted rates to individuals employed by a plan sponsor, usually the employer, with the sponsor guaranteeing payment. In January 1996, JWC offered employees of the City of St. Louis (hereinafter City) cellular services under an ACBC plan. Although JWC was aware that City's charter precluded it from serving as guarantor on an ACBC account, JWC distributed a "market survey" to City employees. JWC subsequently entered into an ACBC agreement with Surfaction Products, Inc. (hereinafter Surfaction) to serve as guarantor on the cellular telephone contracts with City employees, although they were not employed by Surfaction. Pursuant to the Surfaction ACBC plan, JWC sold cellular service to individual City employees.

In January 1996, CyberTel advised JWC that it should stop offering unapproved "special plans" to City employees in violation of its "dealer agreement." When JWC continued to enroll City employees as subscribers, CyberTel determined that Surfaction was not financially qualified to guarantee the number of activations under its ACBC plan and informed Surfaction that it should stop soliciting new accounts. In March 1996, CyberTel terminated its relationship with JWC.

JWC brought an action against CyberTel in the City of St. Louis, alleging breach of the Sales Agreement (Count I), breach of the Equipment Agreement (Count II), and unjust enrichment. Based on a venue provision contained in the contracts, CyberTel moved to dismiss or to transfer venue to either Cook County or St. Louis County. The trial court ordered the case transferred to St. Louis County. JWC then voluntarily dismissed the action.

JWC later brought the present action against CyberTel and Eckhout (hereinafter jointly referred to as CyberTel) for tortious interference with JWC's business relationship with Surfaction. CyberTel moved for summary judgment on the basis that JWC failed to state a claim. The trial court granted summary judgment in favor of CyberTel. JWC appeals.

In its first point on appeal, JWC challenges the trial court's grant of summary judgment in favor of CyberTel. Summary judgment may be entered when a movant demonstrates, through the pleadings, depositions, answers to interrogatories, and

---

1. JWC's predecessor in interest, Programmer Analyst Temporary Service, Inc. d/b/a Juris-purdence Management Systems, entered into both contracts with Cybertel.

admissions on file, together with any affidavits, that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law. Rule 74.04. Our standard of review is essentially *de novo*. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment." *Id.* The appellate court reviews the record in the light most favorable to the party against whom judgment was entered. *Id.* Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* The review of a grant of summary judgment is equivalent to reviewing a court-tried proceeding; if the judgment is sustainable under any theory, it must be sustained. *Jos. A. Bank Clothiers, Inc. v. Brodsky*, 950 S.W.2d 297, 300 (Mo.App. E.D.1997).

The salient issue is whether CyberTel was entitled to summary judgment as a matter of law because JWC had no cause of action against CyberTel for tortious interference with a business expectancy.

In *Maupin v. Hallmark Cards, Inc.*, 894 S.W.2d 688, 691 (Mo.App. W.D.1995), the plaintiff brought an action against Hallmark for breach of a settlement agreement in denying him certain retirement benefits and in excluding him from consideration in his post-resignation business of buying and selling used and surplus office supplies, furnishings, and equipment. The plaintiff's claim for tortious interference was premised on Hallmarks orally agreeing to sell to a third party, through the plaintiff, a quantity of goods, and then, after the plaintiff contacted the prospective buyer, reneging on the sale. *Id.* at 696. The appellate court affirmed the trial court's grant of summary judgment in favor of Hallmark on the plaintiff's claim for tortious interference with a business expec-

tancy. *Id.* The court reasoned that if Hallmark had a duty to deal with the plaintiff on a non-discriminatory basis, that duty arose from the contract between Hallmark and the plaintiff. *Id.* The court stated that the plaintiff's "remedy, if any, is for Hallmark's breach of contract." *Id.*

In *I.R.V. Merchandising Corp. v. Jay Ward Productions, Inc.*, 856 F.Supp. 168, 170 (S.D.N.Y.1994), the plaintiff brought an action against the defendant, alleging, *inter alia*, tortious interference with a prospective economic advantage for the alleged breach of a licensing agreement by the defendants, owners of copyrights and trademarks in cartoon characters. Determining that there was no cause of action for the intentional interference with a prospective economic advantage, the court granted the defendant's motion to dismiss that claim. *Id.* at 175. The court reasoned that the plaintiff was acting solely as the agent for the defendant and the only contractual relationships created would have been between the defendant and the licensees and not between the plaintiff and any third party. *Id.* at 175.

Here, like the plaintiff in *I.R.V.*, JWC was acting solely as the agent for CyberTel in securing customers for cellular service. The contracts with the cellular customers were contracts between CyberTel and the customers, not between JWC and the customers. The relationships between Surfaction and the individual City employees who became customers of CyberTel were not the type of contractual business relationships protected by the tort of interference with a business expectancy. Further, the tort of interference with a business expectancy cannot lie against a party to a contract which creates the business expectancy. *See, e.g., Kosson v. Algaze et al.*, 203 A.D.2d 112, 610 N.Y.S.2d 227, 228 (N.Y.A.D. 1 Dept.1994) (no tort of interference with an employment contract against party to employment contract). As in *Maupin*, because any duty owed to JWC by CyberTel arose from the Sales Agreement and the Equipment Agreement, JWC's remedy, if any,

was for CyberTel's breach of those agreements.

In addition, there can be no liability for tortious interference with a business expectancy against the individual defendant, Eckhout, as an agent of CyberTel. There were neither allegations in JWC's petition nor evidence showing that Eckhout used improper means, acted in bad faith, acted out of self-interest, or acted outside the scope of his authority, such that he would be subjected to individual liability. *See Meyer v. Enoch*, 807 S.W.2d 156, 159 (Mo.App.1991). JWC's first point is denied.

In its second point, JWC charges error in the trial court's exclusion of its supplemental memorandum in opposition to CyberTel's motion for summary judgment. JWC's claim is without merit. First, JWC's attempt to submit supplementary materials was in contravention of Rule 74.04(c)(2), which delineates the procedures the responding party must follow:

> The response shall admit or deny each of movant's factual statements in numbered paragraphs that correspond to movant's numbered paragraphs, shall state the reason for each denial, shall set out each additional material fact that remains in dispute, and shall support each factual statement asserted in the response with specific references to where each such fact appears in the pleadings, discovery or affidavits.

Second, the trial court indicated that it did review the proffered materials and stated, "The Court has reviewed the proffered supplementary materials, *ex gratia*, and concludes that their inclusion would not alter the case...." JWC's second point is denied

The judgment of the trial court is affirmed.

MARY K. HOFF, Judge and JAMES A. PUDLOWSKI, Senior Judge: Concur.