Joseph J. KELLY, et al., Respondents,

v.

STATE FARM MUTUAL AUTO-
MOBILE INSURANCE CO.,
et al., Appellants.

No. WD 66408.

Missouri Court of Appeals,
Western District.

Jan. 23, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 27, 2007.

Application for Transfer Denied
May 1, 2007.

Thomas E. Wack, Elizabeth C. Carver, co-counsel, St. Louis, for appellants.

George A. Hanson, Kansas City, for respondents.

Before JOSEPH M. ELLIS, Presiding Judge, HAROLD L. LOWENSTEIN, Judge and RONALD R. HOLLIGER, Judge.

JOSEPH M. ELLIS, Judge.

State Farm Mutual Automobile Insurance Company, State Farm Life Insurance Company, State Farm Fire & Casualty Company, and State Farm General Insurance Company (collectively referred to hereinafter as "State Farm") appeal from a judgment totaling $19,760,000 entered

against them in the Circuit Court of Jackson County in an action filed against them for breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with business expectancy, and punitive damages brought by Respondents Joseph Kelly, Tanya Glockner, Lee Saghirian, Michael Morgan, and Clifford Lykke (collectively referred to hereinafter as Plaintiffs).

Plaintiffs were all independent contractors who sold insurance products for State Farm on an exclusive basis. To that end, they all executed a State Farm Agent's Agreement ("the Agency Agreement"). Kelly executed his Agency Agreement in Missouri. Glockner and Saghirian executed theirs in Maryland. Morgan executed his agreement in Ohio, and Lykke executed his in Texas.

In December 1999, after discovering that Plaintiffs had made public statements critical of State Farm, State Farm sent letters to Glockner, Saghirian, Morgan, and Lykke informing them that State Farm was terminating their agency agreements effective in January 2000. State Farm subsequently sent Kelly a similar letter terminating his agency agreement effective February 15, 2000. Plaintiffs sought and obtained internal termination reviews pursuant to the terms of the Agency Agreement. After the respective review committees recommended that the terminations be upheld, State Farm's chief executive officer upheld the termination of Plaintiffs' Agency Agreements.

On February 14, 2002, Kelly filed suit in the Circuit Court of Jackson County, Missouri, alleging that State Farm wrongfully terminated his Agency Agreement. On February 2, 2004, the court allowed Glockner, Morgan, Saghirian, and Lykke to join as additional parties. After the petition was amended, it included claims that (1) State Farm wrongfully terminated Plaintiffs' Agency Agreements without good cause, (2) State Farm breached the covenant of good faith and fair dealing in terminating the Agency Agreements, (3) State Farm intentionally interfered with Plaintiffs existing and prospective business relationships with existing and prospective policyholders, and (4) that Plaintiffs were entitled to punitive damages. Following a fourteen-day trial, on August 5, 2005, the jury returned verdicts awarding a total of $8,730,000 in actual damages to Plaintiffs against State Farm on the breach of contract and tortious interference claims. The jury also awarded Plaintiffs a total of $11,030,000 in punitive damages against State Farm. The trial court entered judgments against State Farm in accordance with the jury's verdicts. The trial court subsequently denied State Farm's motion for judgment notwithstanding the verdict, for new trial, or for remittitur. State Farm brings six points on appeal from the trial court's judgment.

State Farm's first four points assert that the trial court erred in overruling its motions for directed verdict and motion for judgment notwithstanding the verdict on Plaintiffs' various claims. "The standard of review for a decision on a motion for a directed verdict or a judgment notwithstanding the verdict is the same." *Blue v. Harrah's N. Kansas City, L.L.C.*, 170 S.W.3d 466, 472 (Mo.App. W.D.2005). Because a directed verdict or judgment notwithstanding the verdict should only be granted where the plaintiff fails to make a submissible case, our review is restricted to determining whether the plaintiff made a submissible case. *Boggs ex rel. Boggs v. Lay*, 164 S.W.3d 4, 14 (Mo.App. E.D.2005). "To make a submissible case, a plaintiff must present substantial evidence for every fact essential to liability. Substantial evidence is that which, if true, has probative force upon the issues, and from which

the trier of fact can reasonably decide the case." *Blue,* 170 S.W.3d at 472 (internal quotation omitted). "In reviewing for a submissible case, this court must accept all evidence and reasonable inferences favorable to the verdict, disregarding contrary evidence." *Moran v. Hubbartt,* 178 S.W.3d 604, 609 (Mo.App. W.D.2005) (internal quotation omitted). This Court will not, however, supply missing evidence nor grant the plaintiff the benefit of any unreasonable, speculative, or forced inferences. *Id.* Furthermore, "[i]f the denial of a directed verdict or judgment notwithstanding the verdict is based upon a conclusion of law, we review the trial court's decision *de novo.*" *Boggs,* 164 S.W.3d at 15.

Before addressing the various points on appeal, we note that the parties have conceded, both at trial and now on appeal, that the substantive law of Missouri applies to Kelly's claims, Maryland substantive law applies to Glockner–Schultz and Saghirian's claims, Ohio substantive law applies to Morgan's claims, and Texas substantive law applies to Lykke's claims. Accordingly, as appropriate, we will address the substantive law of each of those jurisdictions in our discussion of State Farm's points on appeal.

In its first point, State Farm claims that the trial court erred in failing to grant judgment notwithstanding the verdict on Plaintiffs' breach of contract claims because the unambiguous language of the Agency Agreement allowed for termination of the agreement at will. With regard to the termination of the agreement, the agency agreements provide:

Section III—TERMINATION OF AGREEMENT

A. This Agreement will terminate upon your death. *You or State Farm have the right to terminate this Agreement by written notice delivered to the other or mailed to the other's last known address.* The date of termination shall be the date specified in the notice, but in the event no date is specified, the date of termination shall be the date of delivery if the notice is delivered, or the date of the postmark, if the notice is mailed. Either party can accelerate the date of termination specified by the other by giving written notice of termination in accordance with this paragraph.

B. In the event we terminate this Agreement, you are entitled upon request to a review in accordance with the termination review procedures approved by the Board of Directors of the Companies, as amended from time to time.

C. After termination of this Agreement you agree not to act or represent yourself in any way as an agent or representative of the Companies.

D. Within ten days after the termination of this Agreement, all property belonging to the Companies shall be returned or made available for return to the Companies or their authorized representative.

E. For a period of one year following termination of this Agreement, you will not either personally or through any other person, agency, or organization, (1) induce or advise any State Farm policyholder credited to your account at the date of termination to lapse, surrender, or cancel any State Farm insurance coverage or (2) solicit any such policyholder to purchase any insurance coverage competitive with the insurance coverages sold by the Companies....

(emphasis added). Thus, the agreement grants either the agent or State Farm the right to terminate the agreement by providing written notice to the other.

Plaintiffs claim that this language merely reflects the mechanism for terminating the agreement and that the agreement is ambiguous as to whether a party must

have good cause for terminating the agreement. The trial court agreed, finding the termination language to be ambiguous in that respect. After making that finding, the trial court considered parol evidence and interpreted the Agency Agreement to require State Farm to have good cause to terminate the agreement.

■ "The question of whether a contract is ambiguous and the interpretation of the contract itself are issues of law that are reviewed *de novo* on appeal."[1] *Executive Bd. of Mo. Baptist Convention v. Carnahan*, 170 S.W.3d 437, 447 (Mo.App. W.D. 2005). Thus, we must consider, *de novo*, whether the Agency Agreements are ambiguous under the substantive law of the various states involved.

■ In interpreting a contract, "[t]he plain, ordinary, and usual meaning of a contract's words are used, and the whole document is considered." *Jackson County v. McClain Enters., Inc.*, 190 S.W.3d 633, 640 (Mo.App. W.D.2006). " 'A contract is ambiguous only if its terms are susceptible of more than one meaning so that reasonable men may fairly and honestly differ in their construction of the terms.' " *Id.* (quoting *Helterbrand v. Five Star Mobile Home Sales, Inc.*, 48 S.W.3d 649, 658 (Mo.App. W.D.2001)). "To determine whether a contract is ambiguous, we consider the whole document and give the words used their natural and ordinary meaning." *Helterbrand*, 48 S.W.3d at 658. "The ambiguity must appear from the four corners of the contract—extrinsic evidence cannot be used to create an ambiguity." *Erwin v. City of Palmyra*, 119 S.W.3d 582, 585 (Mo.App. E.D.2003). "The trial court cannot consider inadmissible parol evidence in interpreting a contract even if the

evidence was admitted without objection." *Helterbrand*, 48 S.W.3d at 658. These rules of contract construction are applicable in all of the jurisdictions relevant to this case. *See Sy–Lene of Wash., Inc. v. Starwood Urban Retail II, L.L.C.*, 376 Md. 157, 829 A.2d 540, 546 (2003); *Beverly v. Parilla*, 165 Ohio App.3d 802, 848 N.E.2d 881, 886 (2006); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex.2003); *Sydlik v. REEIII, Inc.*, 195 S.W.3d 329, 334 (Tex.App.2006).

■ Under the plain language of the Agency Agreement, interpreted in light of the case law of the various applicable jurisdictions, the termination language in the Agency Agreement simply cannot be deemed ambiguous. Those provisions unambiguously allow for termination of the agreement at-will by either party.

■ All of the respective jurisdictions follow the employment-at-will doctrine, under which an employment agreement with no fixed duration is deemed to be at-will and either party may, therefore, terminate the employment relationship with or without cause absent a specific contract term to the contrary. *Dunn v. Enterprise Rent–A–Car Co.*, 170 S.W.3d 1, 6 (Mo.App. E.D.2005); *Suburban Hosp., Inc. v. Dwiggins*, 324 Md. 294, 596 A.2d 1069, 1073 (1991); *Reyna v. First Nat'l Bank in Edinburg*, 55 S.W.3d 58, 71 (Tex. App.2001); *Hanly v. Riverside Methodist Hosps.*, 78 Ohio App.3d 73, 603 N.E.2d 1126, 1129 (1991). Plaintiffs' Agency Agreements were all for indefinite duration and made no reference to requiring cause for the agreement to be terminated. While Plaintiffs contend that the failure of the Agreements to specifically state that they could be terminated without cause

1. "The standard of review is a procedural matter for which this court will apply Missouri law." *Block Fin. Corp. v. America On-*

*line, Inc.*, 148 S.W.3d 878, 884 (Mo.App. W.D. 2004).

gives rise to an ambiguity in the agreement, under the employment at-will doctrine, the employment relationship is deemed to be terminable at-will by either party unless specifically stated otherwise. When a contract does not provide a definite period of employment and fails to include provisions related to the reasons for termination, the contract is deemed to express agreement that the employee can be fired without cause. *Bishop v. Shelter Mut. Ins. Co.*, 129 S.W.3d 500, 506 (Mo. App. S.D.2004); *Reyna*, 55 S.W.3d at 71.

Moreover, the Agency Agreements specifically state that the agent or State Farm has "the right to terminate this Agreement by written notice delivered to the other or mailed to the other's last known address." Similar language has been found to unambiguously create an at-will employment relationship and allow for termination of the employment by either party without cause. *See Bishop*, 129 S.W.3d at 503, 506 (holding provision allowing agency agreement to be terminated by either party "at any time upon written notice to the other party" was clearly terminable at will by either party); *Threadgill v. Farmers Ins. Exch.*, 912 S.W.2d 264, 267 (Tex.App.1995) (holding agreement providing that agency may be terminated by either the agent or the company on three months written notice unambiguously allowed either party to terminate without cause); *James H. Washington Ins. Agency v. Nationwide Mut. Ins. Co.*, 95 Ohio App.3d 577, 643 N.E.2d 143, 147 (1993) (holding agency agreement providing that it could be "cancelled at any time after written notice has been delivered to the other [party]" clearly and unambiguously allowed either party to terminate the agreement with or without cause on written notice) (internal quotation omitted); *see also Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 777–78 (9th Cir.2003); *Olander v. State Farm Mut. Auto. Ins. Co.*, 317 F.3d 807, 810 (8th Cir.2003); *Ex parte Gardner*, 822 So.2d 1211, 1217 (Ala.2001); *Melnick v. State Farm Mut. Auto. Ins. Co.*, 106 N.M. 726, 749 P.2d 1105, 1110 (1988).

Plaintiffs note that the preamble to the Agency Agreement states: "The Companies and the Agent expect that by entering into this Agreement, and by the full and faithful observance and performance of the obligations and responsibilities herein set forth, a mutually satisfactory relationship will be established and maintained." Plaintiffs argue that this language may be interpreted as requiring a breach of the contract in order for the company to terminate an agent. We disagree. The language of the preamble is nothing more than a vague statement of principle, indicating that both parties anticipate being content with the bargain being struck. This language does not allow the Agency Agreement to be read to require cause for it to be terminated. *See Olander*, 317 F.3d at 811 (noting this language was hortatory and holding that it did not give rise to an ambiguity in the contract regarding whether it was terminable at-will). Nothing in the Agency Agreement ties the language of the preamble to the termination provisions in any way.

■ Plaintiffs also contend that the inclusion of a termination review process implies that good cause is required for State Farm to terminate the Agency Agreement. Contrary to Plaintiffs' argument, however, the inclusion of a review procedure to be followed in the event of termination is not inconsistent with at-will employment and does not limit the company's right to terminate the agreement without cause. *See Threadgill*, 912 S.W.2d at 267; *Williams v. First Tenn. Nat'l Corp.*, 97 S.W.3d 798, 803 (Tex.App.2003); *Dwiggins*, 596 A.2d at 1075–76. More specifically, the termination review provision

in the State Farm Agency Agreement "does not compel a conclusion that the contract requires good cause for termination. . . . On the contrary, the Termination Review Provision suggests State Farm's desire to prevent arbitrary terminations without limiting its legal entitlement to terminate at-will by written notice." *Appling*, 340 F.3d at 778; *see also Olander*, 317 F.3d at 811; *Gardner*, 822 So.2d at 1218–19.

The trial court erred in finding that the Agency Agreement was ambiguous with regard to whether the agreement could be terminated without cause. The agreement was clearly terminable at-will by either party. As such, the trial court erred in failing to grant State Farm's motion for judgment notwithstanding the verdict on the breach of contract count.

▮ In its second point, State Farm contends that the trial court erred in refusing to grant judgment notwithstanding the verdict on Plaintiffs' claim alleging a breach of the duty of good faith and fair dealing because such an implied covenant could not override State Farm's contractual right to terminate Plaintiffs at will.

While "[a] small number of courts have implied a covenant of good faith and fair dealing into employment contracts[,] . . . [t]he majority of courts confronting the issue . . . have refused on both policy and analytical grounds to imply any version of the covenant of good faith and fair dealing into employment contracts." *Dwiggins*, 596 A.2d at 1077 (internal quotation omitted). "Because at-will agreements allow an employer to discharge an employee for bad cause, the covenant would impose a duty on the employer to use good faith in making bad cause discharges, a proposition that is merely a semantic step away from flat contradiction." *Id.* (internal quotation omitted). All of the jurisdictions relevant to this appeal have held that there can be no claim for the breach of an implied covenant of good faith and fair dealing in the termination of an at-will employment relationship. *See Bishop*, 129 S.W.3d at 506 ("[T]he Missouri employment at-will doctrine expressly prohibits any consideration of the implied covenant of good faith and fair dealing (inherent in all contracts) when an employer is sued for terminating the employee."); *Dwiggins*, 596 A.2d at 1076–77 ("Although we have generally implied a covenant of fair dealing in negotiated contracts, there is no implied covenant of fair dealing with regard to termination by either side in an employment-at-will."); *Hrehorovich v. Harbor Hosp. Ctr., Inc.*, 93 Md.App. 772, 614 A.2d 1021, 1033 (1992) ("[T]here is no implied covenant of fair dealing with regard to termination by either side in an employment-at-will. Thus, the existence of an implied covenant of good faith and fair dealing is dependent on the existence of an employment contract with a definite term.") (internal quotation omitted); *James H. Washington Ins. Agency*, 643 N.E.2d at 149 ("[T]here is no claim for breach of an implied covenant of good faith and fair dealing in the termination of at-will employment in Ohio."); *City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000) ("[T]here is no duty of good faith and fair dealing in the employment context[.] . . . A court-created duty of good faith and fair dealing would completely alter the nature of the at-will employment relationship, which generally can be terminated by either party for any reason or no reason at all, and we accordingly decline to change the at-will nature of employment in Texas.").

While the agency contracts provided that Plaintiffs were independent contractors, the relationship could be terminated upon written notice. "Such agreements have been characterized as agency con-

tracts 'terminable at will.' In such situations, whether labeled an independent contractor or employee, the relationship and termination of it is governed by general principles enunciated in the at-will doctrine cases." *Bishop*, 129 S.W.3d at 506 (internal citation omitted); *see James H. Washington Ins. Agency*, 643 N.E.2d at 144, 149 (applying principle that there can be no breach of a covenant of good faith and fair dealing in an at-will employment situation where the plaintiff was an independent contractor); *Reyna*, 55 S.W.3d at 71 (applying at-will employment principles to termination of independent contractor relationship).[2] State Farm's Point II is also granted.

 In its third point, State Farm argues that the trial court erred in failing to enter judgment notwithstanding the verdict on Plaintiffs' tortious interference claims because State Farm was party to the insurance contracts with the policyholders and Plaintiffs had no business relationship with the policyholders independent of State Farm's relationship with them. State Farm further contends that the evidence did not establish that its conduct was tortious.

 The insurance policies issued to the policyholders were contracts between the policyholders and State Farm. "[T]he tort of interference with a business expectancy cannot lie against a party to a contract which creates the business expectan-

cy." *Jurisprudence Wireless Commc'ns, Inc. v. CyberTel Corp.*, 26 S.W.3d 300, 302 (Mo.App. E.D.2000); *see also Kaser v. Financial Prot. Mktg., Inc.*, 376 Md. 621, 831 A.2d 49, 54 (2003) ("[T]he tort of wrongful interference with economic relations will not lie where the defendant is a party to the economic relationship with which the defendant has allegedly interfered."); *Central Sav. & Loan Ass'n v. Stemmons Nw. Bank, N.A.*, 848 S.W.2d 232, 241–42 (Tex. App.1992) ("Where a ... principal agent relationship exists, there can be no tortious interference with a contract as a matter of law."); *Charter Broad. Group Ltd. v. K– Country Inc.*, 2005 Ohio 168 (Ohio Ct.App. 2005) ("A claim of tortious interference with contract arises when one party to a contract is induced to breach the contract by the malicious acts of a third person *who is not a party to the contract*.") (emphasis added).

 While Plaintiffs certainly had a relationship with the policyholders, they have failed to identify, and the record does not establish, any business relationship between themselves and the policyholders that did not arise from the fact that they were acting as State Farm's agent. The relationships between Plaintiffs and the policyholders simply were "not the type of contractual business relationship protected by the tort of interference with a business expectancy." *Jurisprudence Wireless Commc'ns, Inc.*, 26 S.W.3d at 302.[3] Ac-

---

2. While Maryland does not appear to have addressed this issue, we believe Maryland too would treat at-will independent contractors consistently with at-will employees in this regard.

3. Moreover, " '[i]f the defendant has a legitimate interest, economic or otherwise, in the contract or expectancy sought to be protected, then the plaintiff must show that the defendant employed improper means in seeking to further only his own interests.' " *Clinch v. Heartland Health*, 187 S.W.3d 10, 16 (Mo.

App. W.D.2006) (quoting *Nazeri v. Missouri Valley Coll.*, 860 S.W.2d 303 (Mo. banc 1993)); *see also Med. Mut. Liab. Soc. of Md. v. B. Dixon Evander & Assocs.*, 339 Md. 41, 660 A.2d 433, 439 (1995) (quoting *Travelers Indem. v. Merling*, 326 Md. 329, 605 A.2d 83, 90 (1992)) (" 'For one to recover for tortious interference with contractual or economic relations, the interference must have been wrongful or unlawful.' "); *Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex.2001) ("[T]o establish liability for interference with

cordingly, the trial court erred in failing to grant State Farm's motion for judgment notwithstanding the verdict on Plaintiffs' tortious interference claim.

In its fourth point, State Farm claims that the trial court erred in failing to grant its motion for judgment notwithstanding the verdict on Plaintiffs' claims for punitive damages. State Farm argues that Plaintiffs' punitive · damages claims must fail because Plaintiffs failed to prove the State Farm committed an underlying tort.

 As discussed *supra,* the trial court erred in failing to grant State Farm's motion for judgment notwithstanding the verdict on Plaintiffs' other claims. "A punitive damage claim is not a separate cause of action, it must be brought in conjunction with a claim for actual damages." *Misischia v. St. John's Mercy Med. Ctr.,* 30 S.W.3d 848, 866 (Mo.App. E.D.2000) (internal quotation omitted).[4] Thus, "[a] plaintiff must prevail on his or her underlying claim to submit punitive damages to the jury." *Romeo v. Jones,* 144 S.W.3d 324, 334 (Mo.App. E.D.2004);

*see also Moskovitz v. Mt. Sinai Med. Ctr.,* 69 Ohio St.3d 638, 635 N.E.2d 331, 342 (1994) ("[C]ompensable harm stemming from a cognizable cause of action must be shown to exist before punitive damages can be considered."); *Caldor, Inc. v. Bowden,* 330 Md. 632, 625 A.2d 959, 973 (1993) (noting that there must be an compensatory damages award in a tort cause of action underlying an award of punitive damages); *Schlueter v. Schlueter,* 975 S.W.2d 584, 589 (Tex.1998) ("[R]ecovery of punitive damages requires a finding of an independent tort with accompanying actual damages.") (internal quotation omitted). Because Plaintiffs failed to prove an underlying cause of action that could support a punitive damages award, the award of punitive damages in the judgment must be reversed.

Having determined that the trial court should have granted judgment notwithstanding the verdict on all of the claims on which the jury found in favor of Plaintiffs and that the judgment, therefore, must be reversed in its entirety, we need not ad-

---

a prospective contractual or business relation the plaintiff must prove that it was harmed by the defendant's conduct that was either independently tortious or unlawful."); *Fred Siegel Co. v. Arter & Hadden,* 85 Ohio St.3d 171, 707 N.E.2d 853, 858 (1999) ("[E]ven if an actor's interference with another's contract causes damages to be suffered, that interference does not constitute a tort if the interference is justified."); *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council,* 73 Ohio St.3d 1, 651 N.E.2d 1283, 1294 (1995) (stating that tortious interference with a business relationship occurs when a party, *"without a privilege to do so,* induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another.") (emphasis added). As noted *supra,* State Farm had a right to terminate the Agency Agreement upon written notice with or without cause. Thus, State Farm had a legal right to terminate the Agency Agreement and cannot be liable for interference with the

business expectancy of Plaintiffs. "[N]o liability arises for interfering with a contract or business expectancy if the action complained of was an act that the defendant had a definite legal right to do without any qualification." *Healthcare Servs. of the Ozarks, Inc. v. Copeland,* 198 S.W.3d 604, 614 (Mo. banc 2006). Where, as here, an insurer has a right to terminate its relationship with the agent or broker and follows the appropriate procedures in doing so, "the termination itself cannot give rise to a cause of action for wrongful interference with business relationships." *Med. Mut. Liab. Soc. of Md.,* 660 A.2d at 439.

4. In Missouri, as a general rule, "punitive damages are not recoverable in a contract case" unless "the breaching party's conduct, apart from an intentional breach of the contract, amounts to a separate, independent tort." *Carter v. St. John's Reg'l Med. Ctr.,* 88 S.W.3d 1, 23 (Mo.App. S.D.2002) (internal quotation omitted).

dress the remaining points contained in State Farms' appeal which raise evidentiary issues.

The judgment is reversed.

All concur.