LAWRENCE E. MOONEY, JUDGE.
In this action brought by Scott Caldwell alleging employment discrimination by his former employer and supervisor, the defendants appeal from the trial court's order denying their motion to compel arbitration. Because the purported arbitration agreement lacks consideration, we affirm.
Factual & Procedural Background
Mr. Caldwell filed a petition against the defendants with the following allegations. Mr. Caldwell began working for UniFirst as a District Service Manager in May of 2012. His job duties included supervising and managing route drivers, scheduling, customer service, territory and route sales, and other general managerial responsibilities.
In January of 2014, Mr. Caldwell's lower back began to cause him great discomfort and pain. His physician diagnosed him as having a lumbar disc protrusion, a lumbar disc herniation that impinged on nerve roots, and severe intractable back and leg pain. Mr. Caldwell's physician recommended restrictions on lifting and repetitive bending. At first, UniFirst accommodated these restrictions. Mr. Caldwell satisfactorily performed his job duties with the limited accommodations in place.
The work environment changed at the end of 2014. In mid-December, with Mr. Caldwell still experiencing severe pain, Mr. Caldwell's physician ordered Mr. Caldwell to take eleven days off work, and then to return to light duty. Over the next several months, the physician ordered further limitations on weight lifting, bending, stooping, squatting, climbing, twisting, and kneeling. He also advised against long periods of sitting, and recommended frequent rest breaks from standing, sitting, or walking.
Michael Seever, Mr. Caldwell's supervisor, protested, calling Mr. Caldwell's need for time off "unacceptable." Further, he disregarded Mr. Caldwell's repeated requests for accommodation. Instead, he repeatedly assigned Mr. Caldwell, a district service manager, to the more physically strenuous tasks of a route sales representative. In March, Mr. Seever outright denied Mr. Caldwell's accommodation requests and unilaterally placed Mr. Caldwell on extended non-paid medical leave, telling Mr. Caldwell he had done so because Mr. Caldwell had filed a workers' compensation claim.
Mr. Caldwell underwent surgery at the end of May 2015. His physician informed UniFirst that Mr. Caldwell could return to work at the end of June with restrictions, and that he could return to full duty without restrictions at the beginning of August. UniFirst, however, did not allow Mr. Caldwell to return to work. Instead, the company denied Mr. Caldwell's requests for accommodation and unilaterally extended his non-paid medical leave to the end of July. UniFirst fired Mr. Caldwell by letter dated July 27, 2015.
Mr. Caldwell sued UniFirst and Mr. Seever for employment discrimination, in violation of the Missouri Human Rights Acts. He alleged that UniFirst and Mr. Seever refused to accommodate his disability, that they discharged him because of his disability, and that they retaliated against him because he complained of discrimination and requested accommodations for his disability. Mr. Caldwell also alleged *594 that UniFirst discriminated against him and wrongfully discharged him because he had filed a workers' compensation claim.
UniFirst and Mr. Seever moved to compel arbitration of Mr. Caldwell's claims. They asserted that the parties had entered into a mutually-binding and enforceable arbitration agreement that required them to arbitrate, not litigate, disputes arising out of Mr. Caldwell's employment with UniFirst. Defendants further argued that the arbitration agreement delegated all formation and enforcement issues, including all threshold issues, to the arbitrator for determination.
When Mr. Caldwell began working for UniFirst, he signed an Employment Agreement and Restrictive Covenant ("employment agreement"). That agreement provided that Mr. Caldwell was hired for a two-week period that automatically renewed every two weeks, unless terminated by either party, for any reason, upon two weeks' notice. The short-duration employment agreement also contained a non-compete clause, a number of restrictive covenants regarding the protection of Uni-First's trade secrets and confidential information, and the following arbitration clause:
9. Arbitration of Disputes
Any controversy or claim arising out of or relating to this Agreement or the breach thereof or otherwise arising out of the EMPLOYEE'S employment or termination of that employment (including, without limitation, any claims of unlawful employment discrimination whether based on age or otherwise) shall, to the fullest extent permitted by law, be settled by arbitration in any forum and form agreed upon by the parties or, in the absence of such an agreement, under the auspices of the American Arbitration Association ("AAA") in the city of the AAA office nearest the location of the EMPLOYEE'S most recent employment with the COMPANY, in accordance with the Employment Dispute Resolution Rules of the AAA, including, but not limited to, the rules and procedures applicable to the payment and selection of arbitrators. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. This Section 9 shall be specifically enforceable. Notwithstanding the foregoing, this Section 9 shall not preclude either party from pursuing a court action for the sole purpose of obtaining a temporary restraining order or a preliminary injunction in circumstances in which such relief is appropriate including, but not limited to, per Section 10 below; provided that any other relief shall be pursued through an arbitration proceeding pursuant to this Section 9.[1]
The Employment Dispute Resolution Rules of the AAA, referenced here, and generally referred to by the parties as the "delegation provision," state that an arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." American Arbitration Association, Employment Arbitration Rules and Mediation Procedures, Rule 6a. The AAA rules further provide that the arbitrator "shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part...." Id., Rule 6b.
The trial court denied defendants' motion, with two key holdings. The court first *595 found that Mr. Caldwell was an at-will employee, and as such his employment was not valid consideration to create a valid agreement to arbitrate. Secondly, the trial court found that the employment agreement lacked mutuality, because UniFirst had reserved for itself that ability to assert its claims against Mr. Caldwell in court, while Mr. Caldwell was forced to arbitrate any claims he might have.
UniFirst and Mr. Seever (collectively hereinafter "UniFirst") appeal, asserting that the trial court erred in denying their motion to compel arbitration because Mr. Caldwell had signed a valid and enforceable arbitration agreement that covered his claims.[2]
Standard of Review
Whether the trial court should have granted a motion to compel arbitration is a question of law that this Court reviews de novo. Eaton v. CMH Homes, Inc., 461 S.W.3d 426, 431 (Mo. banc 2015). The party seeking to compel arbitration has the burden of proving the existence of a valid and enforceable arbitration agreement. Jimenez v. Cintas Corp., 475 S.W.3d 679, 683 (Mo. App. E.D. 2015).
Discussion
We begin with the most basic of principles. Arbitration is a matter of contract. Jimenez, 475 S.W.3d at 683. Any obligation to arbitrate is based on assent and agreement. NutraPet Systems, LLC v. Proviera Biotech, LLC, 542 S.W.3d 410, 413 (Mo. App. W.D. 2017). Arbitration will only be compelled where a valid arbitration agreement exists and the specific dispute falls within the scope of that agreement. Id. A party cannot be required to arbitrate a dispute that it has not agreed to arbitrate. Morrow v. Hallmark Cards, Inc., 273 S.W.3d 15, 21 (Mo. App. W.D. 2008). Nor may an arbitrator act, absent an agreement. "Arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." State ex rel. Pinkerton v. Fahnestock, 531 S.W.3d 36, 49 (Mo. banc 2017). Put simply, arbitration cannot be compelled in the absence of a contract. Morrow, 273 S.W.3d at 21.
Thus, the threshold issue we must answer is whether a legally enforceable contract to arbitrate exists. Morrow, 273 S.W.3d at 18; Jimenez, 475 S.W.3d at 683. "When the very existence of such an arbitration agreement is disputed, a trial court is correct to refuse to compel arbitration until it resolves the threshold question of whether the arbitration agreement exists." Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 112 (3rd Cir. 2000); see also Sphere Drake Ins. Ltd. v. All Am. Ins. Co., 256 F.3d 587, 591 (7th Cir. 2001)(stating "[A] person who has not consented ... can't be packed off to a private forum ... because the parties do control the existence and limits of an arbitrator's power. No contract. No power.").
*596 UniFirst insists that the Missouri Supreme Court's Pinkerton decision controls here, and that we must give effect to the delegation provision and send this matter - including this threshold issue - to the arbitrator for determination. UniFirst misapprehends the holding in Pinkerton. Pinkerton does not apply under our circumstances. Indeed, the Pinkerton decision supports our conclusion that a court must determine the threshold issue of whether an arbitration agreement exists. Granted, the Pinkerton court enforced a similar incorporated delegation provision, and compelled arbitration of the threshold issue of arbitrability. But a critical difference exists between Pinkerton and our case - that being the nature of the challenge to the arbitration agreement.
Mr. Pinkerton did not challenge whether the arbitration agreement was formed or concluded. Pinkerton presupposes the existence of an arbitration agreement; it did not address whether an agreement was formed in the first place. Nor did Rent-A-Center, upon which Pinkerton relied. Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010). Instead, Mr. Pinkerton challenged the conscionability of the agreement, as did the party in Rent-A-Center.Our Supreme Court acknowledged that unconscionability is a defense to contract formation, and therefore a contract's validity and enforceability. But the Court explained that conscionability is not an essential element of contract formation, and thus not germane to whether a contract has been "concluded." Pinkerton, 531 S.W.3d at 49. And so while the Supreme Court held that issues of formation could be delegated to an arbitrator - as so provided in the incorporated delegation provision - that holding is necessarily limited to the circumstances of the case. The Pinkerton Court was not faced with a challenge to the essential elements of a contract.
Here, on the other hand, Mr. Caldwell contends that an essential element of a contract - consideration - is lacking. Thus, we are faced squarely with a challenge to the very existence of an agreement. And that issue, as our own Supreme Court acknowledges, is an issue for the court's determination. In our Supreme Court's words:
[B]ecause arbitration is a matter of consent, not coercion, a court must be satisfied that the parties have `concluded' or formed an arbitration agreement before the court may order arbitration to proceed according to the terms of the agreement. Questions concerning whether an arbitration agreement was ever concluded are therefore, generally nonarbitral questions.
Pinkerton, 531 S.W.3d at 49 (internal quotations omitted).
UniFirst is incorrect not only as a matter of law, but also as a matter of logic. UniFirst asks that we presuppose the validity of the contract to delegate the question of validity to the arbitrator. Thus, UniFirst asks we assume the conclusion that a contract exists to establish the premise that the parties delegated the validity to the arbitrator. This is circular and fallacious logic.
Our conclusion is buttressed by Section 435.355.1 of the Missouri Revised Statutes. There, the General Assembly provided that if a party denies the existence of an agreement to arbitrate, "the court shall proceed summarily to the determination of the issue so raised...."[3] And so here, *597 before enforcing the purported arbitration agreement, and the provisions contained therein, including the delegation provision, the court must first be satisfied that a contract to arbitrate indeed exists.
Arbitration agreements are "tested through a lens of ordinary state-law principles that govern contracts, and consideration is given to whether the arbitration agreement is improper in light of generally applicable contract defenses." Eaton, 461 S.W.3d at 432. Missouri courts have traditionally applied Missouri contract law to determine whether the parties have entered into a valid agreement to arbitrate. Id. at 431; accord Baker v. Bristol Care, Inc., 450 S.W.3d 770, 774 (Mo. banc 2014); State ex rel. Vincent v. Schneider, 194 S.W.3d 853, 856 (Mo. banc 2006); State ex rel. PaineWebber, Inc. v. Voorhees, 891 S.W.2d 126, 128 (Mo. banc 1995). On this, the law is long and widely settled. "Missouri substantive law governs the issues of the existence, validity, and enforceability of any purported arbitration contract." Morrow, 273 S.W.3d at 21.
But here the purported arbitration agreement in question contains a choice-of-law provision, which states that the arbitration agreement "shall be governed by and construed under the laws of the Commonwealth of Massachusetts." Thus UniFirst contends that we must apply Massachusetts law. We acknowledge that "generally parties may choose the state whose law will govern the interpretation of their contractual rights and duties." Sturgeon v. Allied Professionals Ins. Co., 344 S.W.3d 205, 210 (Mo. App. E.D. 2011); State ex rel. McKeage v. Cordonnier, 357 S.W.3d 597, 600 (Mo. banc 2012). And we will honor the parties' choice-of-law provision if the application of the law is not contrary to a fundamental policy of Missouri. Sturgeon, 344 S.W.3d at 210. "A valid choice of law provision in a contract binds the parties." Cordonnier, 357 S.W.3d at 600. But here, the choice-of-law provision is contained in the very arbitration agreement the existence of which is in question. This Court again would have to resort to circular logic to apply the provision. UniFirst argues that the arbitration agreement is valid if Massachusetts law applies. For Massachusetts law to apply, the choice-of-law provision must be given effect. But the choice-of-law provision is effective only if a valid and enforceable arbitration agreement exists. Thus, Uni-First asks that this Court use a term from the disputed agreement to determine its very existence. See Citibank, N.A. v. Wilson, 160 S.W.3d 810, 812-13 (Mo. App. W.D. 2005). This is untenable. Like the delegation provision, this Court cannot and will not give effect to the choice-of-law provision until we have determined that an arbitration agreement indeed exists. We thus apply Missouri law.
Employers and employees are free to enter into an agreement to arbitrate disputes, but the agreement is not valid unless it reflects the essential contract elements required under Missouri law. Frye v. Speedway Chevrolet Cadillac, 321 S.W.3d 429, 436 (Mo. App. W.D. 2010). The elements required to form a valid contract in Missouri are offer, acceptance, and bargained-for consideration. Id. (quoting Johnson v. McDonnell Douglas Corp., 745 S.W.2d 661, 662 (Mo. banc 1988)); Baker, 450 S.W.3d at 774. The issue here is consideration.
*598 In Missouri, legal consideration is essential for the formation of any contract, including one for arbitration. Jimenez, 475 S.W.3d at 683. Consideration consists either of "a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party." Id. at 683-84; Morrow, 273 S.W.3d at 25. So what is the consideration supporting the purported arbitration agreement here? UniFirst claims two sources of consideration: (1) Mr. Caldwell's continued employment; and (2) mutual promises to arbitrate disputes. We conclude, as did the trial court, that neither suffices.
Mr. Caldwell's employment does not supply the requisite consideration. The trial court concluded that Mr. Caldwell was an at-will employee. UniFirst did not properly appeal this conclusion. Without a proper challenge, any alleged trial-court error is not preserved for our review, and the trial court's conclusion stands. Even if UniFirst had properly brought a challenge to the trial court's conclusion, we would likewise find Mr. Caldwell to be an at-will employee. Key indicia of at-will employment include indefinite duration of employment and the employer's option to terminate the employment immediately without cause. Baker, 450 S.W.3d at 775. Here, Mr. Caldwell worked under an employment agreement with a defined term of employment. But, as the trial court astutely noted, the promise of employment was for an "ephemeral" two-week period. The employment agreement automatically renewed and continued in effect for successive two-week periods, until termination by UniFirst or Mr. Caldwell. Either party could terminate the employment agreement, for any reason, upon two weeks' notice. And UniFirst could terminate the employment agreement, without cause, by providing either two-weeks' notice, or two-weeks' salary as severance. Thus UniFirst could immediately terminate Mr. Caldwell without cause. This is not a guaranteed, definite term of employment. Rather, Missouri courts have found this type of agreement to be an at-will employment relationship. Kelly v. State Farm Mut. Auto, Ins. Co., 218 S.W.3d 517, 523 (Mo. App. W.D. 2007); Main v. Skaggs Cmty. Hosp., 812 S.W.2d 185, 186 (Mo. App. S.D. 1991); Baker, 450 S.W.3d at 773. And a promise of at-will employment does not provide the consideration needed to support an arbitration agreement. Morrow, 273 S.W.3d at 26; Jimenez, 475 S.W.3d at 684-85.
UniFirst's purported mutual promise to arbitrate disputes also fails as consideration. Granted, mutual promises can constitute consideration. Where no consideration exists other than the parties' mutual promises, the agreement is commonly referred to as a bilateral contract. Jimenez, 475 S.W.3d at 685. Bilateral contracts are supported by consideration and enforceable when each party promises to undertake some legal duty or liability. Baker, 450 S.W.3d at 776. "These promises, however, must be binding, not illusory." Id. Valid consideration supporting a bilateral contract rests solely on whether the parties' promises to each other are mutually binding. Jimenez, 475 S.W.3d at 685. Consequently, in Missouri, a bilateral contract requires "mutuality of obligation" to form a valid contract. Jimenez, 475 S.W.3d at 686. "A promise is not good consideration unless there is mutuality of obligation, so that each party has the right to hold the other to a positive agreement." Frye, 321 S.W.3d at 442 (quoting Morrow, 273 S.W.3d at 30 (Ahuja, J. concurring)). Mutuality of obligation "means that an obligation rests upon each party to do or permit to be done something in consideration of the act or promise of the other;
*599 that is, neither party is bound unless both are bound." Id. Accordingly, when faced with a bilateral contract, where no other consideration is found, Missouri courts scrutinize whether the obligations are, in fact, mutual. Jimenez, 475 S.W.3d at 686.
A contract that purports to exchange mutual promises will be construed as lacking legal consideration if one party retains the unilateral right to modify or alter the contract to permit the party to unilaterally divest itself of an obligation to perform the promise initially made. Frye, 321 S.W.3d at 442. Stated differently, a promise is illusory, and thus consideration lacking, when one party retains the unilateral right to amend the agreement and avoid its obligation. Baker, 450 S.W.3d at 776. Similarly, where the practical effect of an arbitration agreement binds only one of the parties to arbitration, it lacks mutuality of promise, and is devoid of consideration. Jimenez, 475 S.W.3d at 688-89.
Jimenez is instructive. There, as here, a terminated employee, Ms. Jimenez, sued her former employer for discrimination. The employer sought to compel arbitration pursuant to an employment agreement. The trial court denied the motion, because the purported agreement lacked consideration. Jimenez, 475 S.W.3d at 686-89. The fatal flaw was a provision regarding injunctive relief:
Employer[,] may apply to any court of competent jurisdiction for a temporary restraining order, preliminary injunction or other injunctive relief to enforce Employee's compliance with the obligations, acknowledgments and covenants in this Section 4. Employer may also include as part of such injunction action any claims for injunctive relief under any applicable law arising from the same facts or circumstances as any threatened or actual violations of Employee's obligations, acknowledgements and covenants in this Section 4.
The trial court found that by virtue of this injunctive provision, the employer was not bound to arbitrate its claims against employee, but retained the discretion to seek court action for those claims it wished. Thus, the employer's promise to arbitrate was illusory and devoid of mutuality of obligation. Accordingly, the court held that the employer's promise to arbitrate was not valid consideration and did not support a determination that the parties had formed a valid agreement under Missouri law. Jimenez, 475 S.W.3d at 688-89.
The recent Wilder case is likewise instructive. Wilder v. John Youngblood Motors, Inc., 534 S.W.3d 902 (Mo. App. S.D. 2017). There, an at-will employee sued her former employer alleging wrongful termination. The trial court denied employer's motion to compel arbitration. The arbitration agreement there exempted from arbitration and permitted employer to seek relief in court for claims for "breach of trust violations, use or dissemination of confidential information, unfair competition, disclosure or use of trade secrets." In upholding the trial court's decision, the Southern District of this Court explained that employer was exempted from arbitrating all those causes of action most likely to arise in the course of its at-will employment relationship with its employee, while the employee was bound to arbitrate all matters except those which cannot be arbitrated as a matter of law. Thus, because the practical effect of the arbitration agreement was to bind only one of the parties to arbitration, the Court found that the agreement lacked mutuality of promise, and was devoid of consideration. Wilder, 534 S.W.3d at 909-10.
The purported arbitration agreement here has an injunctive-relief provision, in Section 9, which provides that either party *600 may petition the court for a temporary-restraining order or preliminary injunction. Specifically, Section 9 states:
Notwithstanding the foregoing, this Section 9 shall not preclude either party from pursuing a court action for the sole purpose of obtaining a temporary restraining order or a preliminary injunction in circumstances in which such relief is appropriate including, but not limited to, per Section 10 below; provided that any other relief shall be pursued through an arbitration proceeding pursuant to this Section 9.
Pursuant to this provision, either party may seek injunctive relief in a court of law, thereby sidestepping and avoiding the promised arbitration process. The party would necessarily have to argue and prove the same matters in court as they would present to an arbitrator. This renders meaningless and illusory any promises to arbitrate. Furthermore, although drafted so that both the employer and the employee may pursue a court action, we are unable to fathom a situation where an employee would be the one seeking injunctive relief. Thus, this provision heavily favors the employer. And when read together with Section 10, it is clear that the broad grant of injunctive relief is entirely unilateral, in favor of the employer. Section 10 also provides that the employer can obtain injunctive relief, and may do so without having to show damages. Specifically, the section states:
The EMPLOYEE agrees that it would be difficult to measure any damages caused to the COMPANY which might result from any breach by the EMPLOYEE of the promises set forth in Sections 5, 6, and 7, and that in any event money damages would be an inadequate remedy for any such breach. Accordingly, subject to Section 9 of this Agreement, the EMPLOYEE agrees that if the EMPLOYEE breaches, or proposes to breach, any portion of this Agreement, the COMPANY shall be entitled, in addition to all other remedies that it may have, to an injunction or other appropriate equitable relief to restrain any such breach without showing or proving any actual damage to the COMPANY.
Though craftily-drafted, only the employer is practically afforded the opportunity of a court action and injunctive relief, while the employee remains bound to arbitration. Further, only the employer is afforded a right to injunctive relief without a showing of actual damages. In essence, UniFirst has unilaterally exempted itself from arbitration and has granted itself an exception allowing the company to bring an action in court for any alleged breach, or potential breach, of the employment agreement. We find no mutuality of promise here. And thus the purported arbitration agreement is devoid of consideration.[4]
*601 Conclusion
The purported arbitration agreement is not supported by consideration. Thus a valid agreement to arbitrate does not exist here. The trial court did not err in denying UniFirst's motion to compel arbitration.
We affirm.
COLLEEN DOLAN, P.J., and MARY K. HOFF, J., concur.

Section 10 generally provides that in the event of an employee's breach, UniFirst is entitled to injunctive relief without showing damages. We set out this section in our discussion below.

UniFirst asserts a single point relied on, broadly asserting that "the trial court erred in denying the motion to compel arbitration because Caldwell signed a valid and enforceable arbitration agreement that covers his claims." In its argument under this point, UniFirst asserts numerous grounds for reversal, including the delegation provision, the choice-of-law provision, consideration, and conscionability. The company concedes that it presented multiple legal issues under one point. This is contrary to the Missouri Supreme Court Rules and cases interpreting those rules, which consistently have held that a point is "clearly multifarious" when it "contains more than one basis for reversal." Bowers v. Bowers, , 615 n.9 (Mo. banc 2018). UniFirst's multifarious point does not comply with Rule 84.04(d) and preserves nothing for review. Id. This Court gratuitously exercises its discretion to review the defective point and resolve the issues on the merits.

Section 435.355.1, RSMo 2000, states in full:
On application of a party showing an agreement described in section 435.350, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied.

We fully acknowledge the Court's opinion in Dotson v. Dillard's Inc., (Mo. App. W.D. 2015), which reached a different result, and enforced a delegation provision in the face of a challenge to consideration. As here, Dotson, a terminated employee, sued his former employer alleging discrimination, harassment, and retaliation. The employer moved to compel arbitration pursuant to an employment agreement, which contained a delegation provision giving an arbitrator authority to determine arbitrability of the issues, stating that "any dispute over a Legal Claim concerning this Agreement - the way it was formed, its applicability, meaning, enforcement, or any claim that all or part of this Agreement is void or voidable - is subject to arbitration under this Agreement." Dotson challenged the motion to compel, on a number of grounds, including that the purported agreement was not supported by consideration. The trial court agreed, and denied the motion to compel, finding that the agreement as a whole was unenforceable due to a lack of consideration. Dotson, 472 S.W.3d at 602.
The Western District of this Court reversed. The Court reasoned that the delegation provision clearly and unmistakably provided for the arbitrator to determine arbitrability, and that absent a specific challenge to the validity of the provision, which Dotson had not lodged, the provision was valid and enforceable. Dotson, 472 S.W.3d at 608. There is no need for a specific challenge to the delegation provision when there has been a challenge to the very formation of a contract. Obviously a challenge to the overarching existence of a contract is a challenge to each of the contract's constituent parts. If the whole of the contract is invalid, so too are all its parts. With all due respect, we disagree with the Western District's analysis. The Western District erroneously enforced the delegation provision without first deciding whether an agreement had been concluded.